BROWN, EAGER & HULL CO. v. MOSIER.

1. FRAUDULENT CONVEYANCES—DEBTOR AND CREDITOR—PREFERENCE
—MORTGAGE.
   In this State, the right of a debtor to give one creditor
   a preference over others is unquestionable, if the purpose
   is plain and the instrument not in the nature of an
   assignment or fraudulent.

2. SAME—TRUSTS—ASSIGNMENTS—DELAYING CREDITORS—PRO·RATA
DISTRIBUTION.
   But an instrument in the nature of a trust mortgage con-
   taining recitals that the debtor was insolvent and that
   several of the creditors had signified their intention of
   commencing action and that it was his desire and intention
   to treat them all alike, thereafter providing that those
   creditors who accepted the conditions of the mortgage
   should be entitled to share in the proceeds and that the
   receipt of pro rata proportion thereunder should operate
   as a satisfaction of all claims of consenting creditors, was
   void as tending to hinder and delay a creditor in the
   collection of his claim. (3 Comp. Laws, § 9533; 4 How.
   Stat. [2d Ed.] § 11417).

Error to Cass; Des Voignes, J.  Submitted April
19, 1915.  (Docket No. 134.)  Decided June 14, 1915.

Garnishment by the Brown, Eager & Hull Company
against Carl D. Mosier as garnishee of George P.
Wilder, principal defendant.  Judgment for defendant.
Plaintiff brings error.  Reversed.

*Selling & Brand,* for appellant.

*Hendryx & Mosier (O. W. Coolidge,* of counsel), for
appellee.

The following facts, necessary to understand the
question presented in this case, are taken from the

findings of facts made by the learned trial judge who heard the case below:

"Prior to January 2, 1914, defendant, George P. Wilder, conducted a variety and bazaar store at Dowagiac, Mich., and on said date was indebted to various merchandise creditors in amounts exceeding $4,370, inclusive of the account of the above-named plaintiff of $602.29, exclusive of interest; that prior to the giving of the mortgage hereinafter mentioned several creditors of principal defendant had signified their intention of commencing suit and making levy and sale; that on January 2, 1914, while insolvent and unable to pay his debts in full, said principal defendant gave to Carl D. Mosier, garnishee defendant herein, of the firm of Hendryx & Mosier, attorneys for principal defendant, a chattel mortgage, a copy of which is as follows:

" 'Whereas, George P. Wilder, doing business at 138 South Front street, Dowagiac, Mich., is indebted to divers parties in divers sums of money, the names of which parties and the amounts owing to each, as near as can be ascertained at this time, is as follows: [Setting forth the names of the various creditors and the amounts of their respective claims.]

" 'And whereas, said George P. Wilder is insolvent and is unable to pay his creditors in full; and

" 'Whereas, several of his creditors have signified their intention of commencing suit and making levy and sale; and

" 'Whereas, it is the desire and intention of said George P. Wilder to treat all creditors alike, and for which purpose this instrument is executed:

" 'Now, therefore, this indenture witnesseth: I, George P. Wilder, being justly indebted to divers parties and in divers sums, have for the purpose of securing such indebtedness granted, bargained, sold, and mortgaged, and by these presents do grant, bargain, sell, and mortgage, unto Carl D. Mosier, as trustee for all the creditors of the said George P. Wilder, the following goods, chattels, and personal property, to wit: The entire stock of goods, consisting of variety and bazaar goods, together with all fixtures therein located and belonging to George P. Wilder at 138 South Front street, Dowagiac, Mich. .

" 'This mortgage is intended to cover everything of said stock and fixtures: Provided, however, that said George P. Wilder

reserves unto himself his right of exemption in the sum of two hundred and fifty dollars, according to the statute of exemptions, which said exemption is to be selected by said George P. Wilder after an inventory of said stock and fixtures, which said exemption is to be inventoried and listed so as to be identified in the event any of the creditors shall refuse to accept the provisions of this mortgage and proceedings in bankruptcy shall supervene.

" 'It is understood and agreed that the trustee shall take immediate possession of the above-described property, and shall notify all of the creditors of the said George P. Wilder of the provisions of this instrument, and that they may share in the distribution of said property the trustee shall cause to be made an inventory of said goods and fixtures. The said stock of goods and fixtures may all be sold by trustees at public or private sale, as may be the most advantageous to the creditors, and the proceeds used in discharging the indebtedness of said George P. Wilder as follows: All creditors who shall consent to come within the provisions of this mortgage after due notice by said trustee shall present their claims to said trustee, together with a written consent to come under its provisions and agree to accept at the pro rata of payment which may [be] due and payable to them upon the sale of the assets above described, which pro rata of payment shall be in full settlement and discharge of any claim held by any creditors. If any of said creditors shall refuse to come under the provisions of this mortgage, then only those who do so consent shall share in the proceeds of any distribution.

" 'It is understood and agreed that, should any proceedings in bankruptcy be commenced against George P. Wilder, then the trustee herein named is authorized to turn said stock and fixtures over to the trustee in bankruptcy who may be duly appointed.

" 'Said George P. Wilder hereby represents said property to be free from all liens, incumbrances, conveyances, and levies except as herein stated.

" 'If said trustee cannot sell said stock and fixtures advantageously at private sale, then he is hereby authorized to and shall sell at public auction, after the like notice as is required by constable sales, the goods, chattels, and personal property hereinbefore mentioned, and apply the payment of the proceeds after deducting the necessary expenses and charges under the conditions of this mortgage. If there shall be any balance from

the sale of said stock and fixtures after paying all indebtedness and the costs and charges of this proceeding, then the same shall be returned to the said George P. Wilder.

" 'In witness whereof, George P. Wilder, party of the first part, has hereunto set his hand and seal the 2d day of January, A. D. 1914.

" 'GEORGE P. WILDER.   [L. S.]
" 'Signed, sealed and delivered in the presence of

" 'COY W. HENDRYX,
" '.BLANCH KARNES.'

"Which mortgage was filed with the city clerk of Dowagiac.

"That after receiving said mortgage said Carl D. Mosier immediately took possession of the mortgaged property and sent to the various creditors of the principal defendant a blank form of consent to be filled out by creditors and returned; the form which said Mosier sent to above-named plaintiff being as follows:

" '. . . . . . . . . . . . . . . ., 1914.
" 'To CARL D. MOSIER,

" 'Trustee and Mortgagee:

" 'We hereby consent to the terms in the trust mortgage given by George P. Wilder, of Dowagiac, and consent that his stock of goods be sold and the proceeds pro rated among his mercantile creditors, the amount we receive to be in full of our account against him.

" '. . . . . . . . . . . . . . . . . . . . . .

" 'Amount due on our account at this date is $. . . . . . . . . . . .'

"The above-named plaintiff, because of the provisions of the mortgage requiring it to accept its pro rata share thereunder in full settlement of plaintiff's account against the principal defendant, and because of the provisions excluding it from the benefits of said mortgage unless it did so consent, refused to consent under said mortgage, and has never accepted thereunder, but on February 24, 1914, commenced suit against principal defendant by a declaration, with affidavit of account annexed and rule to plead and notice indorsed, in the circuit court for the county of Cass upon its account, which suit, after due personal service on defendant of the declaration, rule to plead, and affidavit of account and notice of rule to plead, ter-

minated in judgment (at the April term of the court) in favor of plaintiff for the sum of $616.55, which judgment was duly entered and costs thereafter taxed by plaintiff against defendant for $23.10, upon which said judgment an execution was issued and returned by the sheriff of Cass county unsatisfied.

"That, simultaneously with the commencement of above suit, plaintiff garnisheed Carl D. Mosier, the trustee named in said chattel mortgage, the affidavit and writ of garnishment being in the usual form, and alleging that said garnishee defendant had property, money, goods, chattels, credits, and effects in his hands and under his custody and control belonging to said defendant George P. Wilder, and that said Carl D. Mosier was indebted to the said defendant, whether such indebtedness was due or not.

"After due service on the garnishee defendant of the writ of garnishment, the garnishee defendant disclosed in writing that at the time of the service of the writ of garnishment upon him he had not in his hands or under his control any property, money, goods, chattels, credits, or effects of such principal defendant, except under said chattel mortgage, a copy of which mortgage was annexed to such disclosure.   *   *   *

"I further find that the value of such property was $2,000, which amount said garnishee holds at the present time."

KUHN, J. (*after stating the facts*).  It is the contention of the appellant that the provision in the instrument requiring the creditors, as a condition of their receiving the benefits, to accept their dividend pro rata in full settlement and discharge, and excluding any nonassenting creditors from the benefits thereof, makes it as to Brown, Eager & Hull, who never consented to come under its terms, a conveyance void as intended to hinder, delay, and defraud creditors, under the provisions of section 9533, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11417), and, further, that such a provision is coercive, repressive, unjust, and fraudulent, thereby rendering the instrument as

to the plaintiff void. On the other hand, it is contended by the appellee that the so-called coercive clause providing for a release by the assenting creditors in no way injures the appellant, and while it may be said that the clause giving preferences injures the appellant, that it is a well-recognized rule in this State that the mere giving of a preference does not invalidate a mortgage, that the mortgagor had a right to prefer his creditors and leave out the names of the appellants, and therefore it is difficult to see how the appellants are injured by the clause providing that those who accept its provisions should release or discharge their claims.

There is no dispute with reference to the rule, now definitely settled in this State, that a debtor has a lawful right to prefer a creditor, and that the courts are not alert to deprive him or a preferred creditor of their rights, where the intention of the debtor is manifest and the instruments do not legally constitute an assignment, and there is an absence of fraud. *Olmstead* v. *Mattison,* 45 Mich. 617 (8 N. W. 555); *Sheldon* v. *Mann,* 85 Mich. 265 (48 N. W. 573); *Warner* v. *Littlefield,* 89 Mich. 329 (50 N. W. 721); *Fitzgerald* v. *McCandlish,* 89 Mich. 400 (50 N. W. 860); *Weber* v. *Childs,* 90 Mich. 498 (51 N. W. 543); *McMorran* v. *Moore,* 113 Mich. 101 (71 N. W. 505); *Chas. Maloney & Co.* v. *Gonhue,* 152 Mich. 325 (116 N. W. 436).

However, an examination of the instrument here before us is not convincing that its intention was to prefer creditors. It recites that Wilder was insolvent and unable to pay his debts in full, that several creditors had "signified their intention of commencing suit and making levy and sale," and that it was the desire of Wilder "to treat all creditors alike." And while it may be true that Wilder would have a right to prefer such of his creditors as he cared to by giving a

mortgage on his property to protect them, it does not follow that that right carries with it the privilege of coercing creditors into surrendering a part of their claims.  In the case of *Hubbard* v. *McNaughton,* 43 Mich. 220 (5 N. W. 293, 38 Am. Rep. 176), it was said:

"But it is contrary to justice and against public policy to. allow debtors to coerce their creditors into releasing their debts."

It is clear that the avowed purpose of the instrument was to prevent creditors from making levies and sales, if they did get a judgment, and the plaintiff was thus denied access to the very property to which it contributed, unless it was willing to give up a certain amount of its claim.  In this regard it must be said that the objectionable clause was fraudulent, and that its evident purpose was to hinder, delay, and defraud the creditors, and in our opinion made the instrument void, under section 9533, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11417).  In principle we are unable to distinguish the situation here presented from that presented to this court in *Wood* v. *Eldredge,* 147 Mich. 554 (111 N. W. 168), where this court said:

"If, then, upon the face of this instrument, we find that its legal effect was to hinder or delay creditors, the question of fraudulent intent is a question of law, and not a question of fact.  To bring the transaction within the prohibition of the statute, it is not necessary that the transfer should actually defraud creditors.  It is sufficient if it only hinder and delay them. *McBryan* v. *Trowbridge,* 125 Mich. 549 (84 N. W. 1084), quoting 14 Am. & Eng. Enc. Law [2d Ed.], pp. 244, 245."

For a review of the various authorities upon this question, see note to *Maclaren* v. *Kramar* (26 N. D. 244, 144 N. W. 85), in 50 L. R. A. (N. S.) 714-753.

We are therefore of the opinion that the judgment of the court below should be reversed, and, as there

is no question of fact, a judgment there entered in favor of plaintiff and against the garnishee defendant for the full amount of the judgment against the principal defendant, together with the costs to be taxed.

BROOKE, C. J., and MCALVAY, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.